IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-04-2222 |
| MELVIN ALFREDO MALTEZ, ASSOCIATED AUTOMOTIVE, INC., CAL ENDERLI, SHIRLEY ENDERLI, and CAL ENDERLI, JR., Individually and d/b/a ASSOCIATED AUTOMOTIVE SALVAGE, | § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

The Court has before it in this insurance coverage dispute Plaintiff Acceptance

Indemnity Insurance Company's ("Acceptance Indemnity") Motion for Summary

Judgment ("Acceptance Indemnity's Motion") [Doc. # 41].   Defendants Melvin

Maltez, Associated Automotive, Inc. ("Automotive"), Cal Enderli, Shirley Enderli, and

Cal Enderli, Jr. have filed a response [Doc. # 44].   Acceptance Indemnity has filed a

reply [Doc. # 48], and a supplemental reply [Doc. # 52].   Defendants have filed a

surreply [Doc. # 53].  Having considered the parties' submissions and applicable legal authorities, the Court concludes that Acceptance Indemnity's Motion should be **denied**.

## I.   <u>BACKGROUND</u>

Automotive, the insured party in this case, is a Houston corporation that performs a variety of services, including selling, storing, and repairing automobiles.[1] It was incorporated by Cal Enderli, Sr., and has been in operation since at least 1989.[2] Enderli Sr.'s son, Cal Enderli, Jr., created another business in May 2003, operating out of the same premises as Automotive, called Associated Automated Salvage ("Salvage").[3]  Salvage performs services similar to those of Automotive, such as selling used cars, but its primary business is to dismantle automobiles and sell them as parts.[4] Enderli Sr. testified at a deposition in the underlying litigation that Automotive does not perform salvage work.[5]  Defendant Melvin Maltez was employed at the shared premises of Automotive and Salvage, although which company (and which Enderli) employed him is disputed.  Maltez sued Automotive, Cal Enderli, Sr., and Cal Enderli,

---

[1]    Deposition of Cal Enderli, Sr. ("Enderli Sr. Depo."), Exhibit D to Motion, at 7-8.

[2]    *Id*.

[3]    *See* Deposition of Cal Enderli, Jr. ("Enderli Jr. Depo."), Exhibit E to Motion, at 6-7.  Salvage is a registered business name, but does not appear to be incorporated.  *Id*. at 6.

[4]    *Id*.

[5]    Enderli Sr. Depo., at 12 (Automotive specifically does not "disassembl[e] automobiles").

Jr. d/b/a Associated Salvage, in state court in Harris County, Texas for injuries he sustained on August 7, 2003.[6]  Maltez alleged that the torch he was using to dismantle an automobile exploded, causing disfiguring burns.

Acceptance Indemnity had previously issued a "Commercial Auto Coverage Part-Garage Policy," Policy No. CG00031677 (the "Policy") with "Associated Automotive, Inc., d/b/a Associated Carpro," as the named insured.  The Policy contains an exclusion precluding coverage for injuries to the insured's employees "arising out of and in the course of employment by the insured."[7]  Acceptance Indemnity filed this action seeking a declaration that it had no duty to defend or to indemnify Defendants in the underlying lawsuit because Maltez was an employee of its insured, Automotive, at the time of the accident, and that there is no coverage under the policy for punitive damages.  Holding that Maltez had asserted a claim potentially within the scope of coverage under the Policy, the Court stayed and administratively closed this case pending the resolution of the underlying lawsuit.  *See* Memorandum and Order ("Prior Memorandum") of March 22, 2005 [Doc. # 29], at 11-12.

---

[6]    The state court lawsuit is *Maltez v. Associated Automotive, Inc., et al.*, No. 2004-01878, in the 80th Judicial District for Harris County, Texas.

[7]    Policy, Exhibit A to Motion, at 66 (formatting omitted).  The insurance policy is not separately paginated, and Acceptance Indemnity has failed (as it did with its first Motion for Summary Judgment, before this case was administratively stayed) to separately file or designate the specific provision upon which it relies.  The Court will cite to the pagination of Exhibit A as designated by the heading added by the electronic filing system.

In accordance with this Court's order, Acceptance Indemnity provided a defense against Maltez's claim in the state court.  On November 20, 2006, the state court entered a jury verdict in Maltez's favor against Automotive, the Enderlis, and Salvage. Specifically, the court entered a judgment against Cal Enderli, Jr. d/b/a Salvage in the amount of $150,000 in compensatory damages as well as over $200,000 in pre- and post-judgment interest, costs, and fees.[8]  The judgment specifies that Enderli Jr., Salvage, and Automotive are jointly and severally liable for all damages, interest, fees and taxable costs.[9]  The Texas court also entered judgment, based on the jury verdict, that "Calvin Enderli, Jr. d/b/a Associated Automotive Salvage and Defendant Associated Automotive, Inc. formed a Single Business Enterprise."[10]

On Plaintiff's motion, the Court lifted the stay and reopened the case.[11]  Plaintiff Acceptance Indemnity now moves for summary judgment, arguing as it did earlier that there is no coverage for Maltez's injury under the Policy.

---

[8]     See Judgment, Exhibit C to Motion, at 1-2.

[9]     Id. at 2.

[10]    Id. at 1-2.

[11]    See Order Reopening Case, January 26, 2007 [Doc. # 32].

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005).  The moving party, however, need not negate the elements of the non-movant's case.  *See*

*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial.  *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).   "An issue is material if its resolution could affect the outcome of the action.  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.  *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003).  However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).  The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings.  *See Diamond*

*Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002).  Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden.  *Morris v. Covan World Wide Moving, Inc.*,  144 F.3d 377, 380 (5th Cir. 1998).  Instead, the nonmoving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts.  *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### B.    Interpretation of Insurance Policies

Interpretation of an insurance policy is a question of law. *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 135 (5th Cir. 1990); *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997).  In a diversity case such as this, the Court applies Texas law to construe the policy. *See American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998).  "Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts in general." *Id*.  Where a clause is unambiguous, however, "a court cannot resort to the various rules of construction."  *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987).  If the policy is ambiguous, it "must be strictly construed in favor of the insured

to avoid the exclusion." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006).

"The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies." *United Nat. Ins. Co. v. Hydro Tank, Inc.*, --- F.3d ----, 2007 WL 2319109 (5th Cir. Aug. 15, 2007) (citing *Lincoln Gen'l Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir.. 2005)).  The insurer bears the burden of showing that a policy limitation or exclusion constitutes an affirmative defense to or avoidance of coverage.  *See Lincoln Gen. Ins. Co.,* 468 F.3d at 859; TEX. INS. CODE ANN. art. 554.002; *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex. App.—Dallas 2007, no pet.).[12]  The Court strictly construes exceptions and limitations in an insurance policy against the insurer. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 99 F.3d 695, 701 (5th Cir. 1996).

## III.   DISCUSSION

In a section titled "Employee Indemnification and Employer's Liability," the Policy specifically excludes from coverage "'Bodily injury' to:

---

[12]    During the pendency of Maltez's suit in state court, Texas recodified its insurance law. TEX. INS. CODE ANN. art. 21.58 (2004), which was in force at the time of the Court's last substantive ruling in this case, was repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a) (effective Apr. 1, 2005).  The new statutory language, codified at TEX. INS. CODE ANN. art. 554.002, is not substantively different. *See Yorkshire Ins. Co., Ltd. v. Seger*, --- S.W.3d ----, 2007 WL 1771614 (Tex. App.—Amarillo 2007) ("the Legislature expressly indicated that no substantive change in the law was intended").

a.    An 'employee' of the 'insured' arising out of and in the course of:

(1)    Employment by the 'insured'; or
(2)    Performing the duties related to the conduct of the 'insured's' business; . . .[13]

This exclusion does not apply to a "temporary worker," which refers to a person who is furnished for a finite time period to support or supplement an insured's work force in special work situations, such as employee absences, temporary skill shortages, and seasonal workloads.[14]

Employee exclusions such as that in the Policy are enforceable under Texas law. *See Consumers County. Mut. Ins. Co. v. P.W. & Sons, Trucking, Inc.*, 307 F.3d 362, 367 (5th Cir. 2002); *Westchester Fire Ins. Co. v. American General Fire and Casualty Co.*, 790 S.W.2d 816, 818 (Tex. App.—Austin 1990, no writ); *Aberdeen Ins. Co. v. Bovee*, 777 S.W.2d 442, 444 (Tex. App.—El Paso 1989, no writ); *Assicurazioni Generali, SpA v. Pipe Line Valve Specialties Co., Inc.*, 935 F. Supp. 879, 883-84 (S.D. Tex. 1996).

***Automotive as Maltez's Sole Employer.***— Acceptance Indemnity argues that extrinsic evidence shows that Maltez was subject to the exemption because extrinsic

---

[13]    Policy, at 66.

[14]    *Id.*

evidence shows that he was an employee of Automotive.[15]   It points to Maltez's deposition during the litigation in state court, in which Maltez testified that he believed that "I was working for Associated Automotive, Inc.," because "the check stubs that I received[,] the name of the company was there."[16]   He also testified that he was not aware that Enderli Jr. had created a separate business, and that there were no Salvage signs on the premises.[17] Maltez's W-2 forms for 2001, 2002, and 2003 list Automotive as his employer.[18]   The tax records reflect that Automotive was paying Maltez at the time of the incident,[19] and Automotive admitted during the underlying litigation that the records accurately reflected its own payroll.[20]

---

[15]   The Court declined to consider extrinsic evidence when determining the scope of Acceptance Indemnity's duty to defend under the Policy.  *See* Prior Memorandum, at 10-11.  This Motion concerns Acceptance Indemnity's duty to indemnify, which is a separate determination.  *See Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, L.L.P.*, 267 F.Supp.2d 601, 613 n.6 (E.D. Tex. 2003) (citing *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002)).  The Court may consider extrinsic evidence to determine the scope of the duty to indemnify.  *Id*.

[16]   Deposition of Melvin Maltez ("Maltez Dep."), Exhibit F to Motion, at 15.

[17]   *Id*. at 9-10; 15.

[18]   Form W-2 Wage and Tax Statements, 2001-2003, Exhibit G to Motion, at 134-36.  Maltez suffered his injury on August 7, 2003.

[19]   *Id*. at 137-38.

[20]   *See* Defendant Associated Automotive Inc.'s Responses to Plaintiff's Interrogatories and Requests for Admissions, Exhibit H to Motion, at 4.  Automotive specifically denied, however, that Maltez was its employee at the time.  *Id*.

Defendants dispute that Maltez was employed by Automotive.  They contend that Enderli Jr. "purchased the salvage business" from Automotive in May 2003, three months before Maltez's injury.[21]  In support of this assertion they offer affidavits from Enderli Sr.[22] and Enderli Jr.[23] as well as excerpts from Enderli Jr.'s deposition.  They also offer a document, dated May 2003, that allegedly memorializes the terms of the sale.[24]  According to the Agreement and the Enderlis' affidavits, the Enderlis agreed that Automotive would provide payroll services for Salvage until Salvage was established enough to perform this service for itself.[25]  Defendants contend that this agreement explains why Maltez was in fact an employee of Salvage, but appeared on Automotive's payroll.[26]

---

[21]     Response, at 4.

[22]     *See* Affidavit of Cal Enderli, Sr. ("Enderli Sr. Aff."), Exhibit 1 to Response,  ¶ 6.

[23]     *See* Affidavit of Cal Enderli, Jr. ("Enderli Jr. Aff."), Exhibit 2 to Response,  ¶ 2.

[24]     *See* Rental Purchase Agreement (the "Agreement"), Attachment to Enderli Sr. Aff.  ("The title of the document was intended to reflect both the fact that Cal Enderli, Jr. was purchasing the salvage business and was going to rent a portion of the premises from Associated Automotive Inc."  Response, at 4 (citing Enderli Sr. Aff., ¶ 6)).

[25]     *See* Agreement; Enderli Sr. Aff., ¶¶ 6-7; Enderli Jr. Aff, ¶¶ 2-3.  "Pursuant to this aspect of the agreement, [Automotive] issued paychecks to Cal Enderli Jr.'s employees and he reimbursed it for such payments."  Response, at 5, ¶ 11.  Attached to Enderli Jr.'s affidavit is a check in the amount of $664, made out to Automotive, bearing the notation "for payroll" and dated June 29, 2004.

[26]     Response, at 5.

Plaintiff has offered extrinsic evidence that Maltez was employed by Automotive at the time of his injury, an element for which it has the burden of proof. Defendants' evidence, however, provides an alternative explanation for Plaintiff's proof, and establishes a genuine question of material fact as to whether Automotive was Maltez's sole employer in August 2003.[27]  Summary judgment therefore is not warranted on this basis.

*__Automotive and Salvage as "Joint Employers" of Maltez.__*— Acceptance Indemnity argues in the alternative that the Enderlis' two businesses employed Maltez jointly.  To make this showing, Plaintiff relies primarily on the state-law "single business enterprise" doctrine.  Although Acceptance Indemnity highlights the Texas jury's verdict that "Calvin Enderli, Jr. d/b/a Associated Automotive Salvage and Defendant Associated Automotive, Inc. formed a Single Business Enterprise," it does not ask the Court to apply the doctrine of collateral estoppel.[28]  "An argument that the opposing party is estopped from litigating an issue must be timely raised," and by failing to do so, Acceptance Indemnity has waived an offensive application of collateral estoppel.  *Seneca-Cayuga Tribe of Oklahoma v. National Indian Gaming Comm'n,*

---

[27]     By way of example, there is inadequate evidence in the record of the work Maltez actually performed during the three months after Salvage was created, and, as relevant below, who controlled that work.

[28]     Judgment, at 1-2.

327 F.3d 1019, 1029 (10th Cir. 2003) (citing *Arizona v. California*, 530 U.S. 392, 410 (2000)).[29]   Because the parties do not seek to preclusively apply the state-court judgment, this Court will not look to that judgment as dispositive or probative on the question of Maltez's employer.

Plaintiffs argue that Automotive and Salvage comprised a "single business entity" under state law, and urge the Court to find on the basis of the summary judgment record that Maltez was accordingly an Automotive employee as a matter of law.[30]   "The 'single business enterprise' theory is an equitable doctrine used to disregard the separate existence of corporations when the corporations are not operated as separate entities, but rather integrate their resources to achieve a common business purpose."  *Formosa Plastics Corp., USA v. Kajima Intern., Inc.*, 216 S.W.3d 436, 460 (Tex. App.—Corpus Christi 2006, no pet. h.).  Its purpose, "like the alter ego theory and other doctrines designed to pierce the corporate veil, is to prevent an inequitable

---

[29]   See also *In re Fitch*, 349 B.R. 133, 141 (Bankr. N.D. Tex. 2006).  In *Fitch*, the bankruptcy court analyzed the pleading requirements for the offensive use of collateral estoppel.  The court concluded that although "[t]he Fifth Circuit has not addressed the necessity of affirmatively pleading offensive collateral estoppel," the doctrine must be pled no later than plaintiff's motion for summary judgment.  *Id*. (citing *Baros v. Texas Mexican R.R. Co.*, 400 F.3d 228, 232 (5th Cir. 2005); *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985); *U.S. v. United Air Lines, Inc.*, 216 F.Supp. 709, 718 (E.D. Wash. 1962)).

[30]   *See, e.g.*, Reply, at 14-15.  The Court applies substantive state law in diversity matters, as determined by the state's highest court.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938).

result." *Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 694 (Tex. App.—Beaumont 2005, no pet.).

The viability of the single business enterprise doctrine under Texas law is unclear. Although "several intermediate [Texas] appellate courts . . . have recognized a concept of 'single business enterprise' in one context or another," the *Carlson* court noted that "the [Texas] Supreme Court has thus far reserved ruling on the issue." *Id.* (collecting authority); *see also Formosa*, 216 S.W.3d at 460 ("We would note that the supreme court [*sic*] has not spoken on the viability of the single business enterprise theory."). The Texas Supreme Court itself noted that it "has never considered the 'single business enterprise' concept in any detail." *Southern Union Co. v. City of Edinburg*, 129 S.W.3d 74, 86 (Tex. 2003).[31] Despite the apparent reservations Texas courts have regarding the doctrine, it appears that no court has yet rejected it. Most recently, the Houston Court of Appeals noted that despite the ambiguous validity of the doctrine, "[m]any courts of appeals continue to apply the theory, including in cases decided after the supreme court [*sic*] issued its opinion in *Southern Union*." *Country Village Homes, Inc. v. Patterson*, --- S.W.3d ----, 2007 WL 2332803, *8 (Tex.

---

[31]     Because it decided *Southern Union Co.* on other grounds, the Texas Supreme Court held that it "need not decide today whether a theory of 'single business enterprise' is a necessary addition to Texas law regarding the theory of alter ego for disregarding corporate structure and the theories of joint venture, joint enterprise, or partnership for imposing joint and several liability." *Id.* at 87.

App.—Houston [1st Dist.] 2007, no pet. h.).  For the purposes of the *Erie* analysis, therefore, this Court assumes that the single business enterprise doctrine is valid Texas law despite clear guidance from the Texas Supreme Court.  *See In re Whitaker Constr. Co., Inc.*, 439 F.3d 212, 225 (5th Cir. 2006) ("'an intermediate appellate state court' . . . is datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise") (quoting *Rogers v. Corrosion Prods., Inc.*, 42 F.3d 292, 295 (5th Cir. 1995); *Comm'r. v. Estate of Borsch*, 387 U.S. 456, 465 (1967)).

The specific contours of the doctrine and its applicability in this case are ambiguous.  Texas courts have applied the theory as an equitable doctrine to reach facially distinct business entities for liability purposes.  No Texas or federal court has applied the doctrine in the manner that Acceptance Indemnity now requests.[32]  Nor has any court addressed potentially dispositive issues that must arise when the theory is so applied.  For instance, it is unclear whether Acceptance Indemnity argues that the "single business enterprise" that employed Maltez was Automotive, Salvage, or some separate new entity.  Acceptance Indemnity can only benefit from the employee exclusion through the single business enterprise doctrine if Automotive is that single enterprise; if the employing enterprise is Salvage or a third entity (the single business

---

[32]     *See* Reply, at 3 ("this case might actually be a case of first impression with respect to the application of the employee exclusion in the context of a single business enterprise finding").

enterprise deemed by a court to exist), the exclusion may not apply by its own terms because the employer was not an insured.  These questions are not resolved by the parties in their briefs or by the Texas law identified by the Court's own research.  This federal court is reluctant, unless required to do so by the facts established in the case, to reach the novel issue of whether the "single business enterprise doctrine," a state law theory, should be applied in the private insurance coverage context, particularly when that application would raise difficult insurance questions under state law and would potentially have far-reaching consequences.

The Court turns to another doctrine, the "joint employer" test, which Acceptance Indemnity urges.  Acceptance Indemnity cites *Radio & Television Broad. Union v. Broad. Serv.*, 380 U.S. 255, 256 (1965), for the proposition that multiple "nominally separate business entities [are] a single employer when they comprise an integrated enterprise."  The relevance of *Radio & Television* to the private insurance issues at bar is far from clear; that case is a three-page *per curiam* opinion addressing the National Labor Relations Board's approach to whether to exert its jurisdiction over a specific employer.  *See id*.

The Court is aware of *Quintanilla v. K-Bin, Inc.*, 8 F. Supp. 2d 928, 936 (S.D. Tex. 1998), cited by Acceptance Indemnity.  *Quintanilla* concerned "joint employer" status in the Title VII context, and relied upon *Trevino v. Celanese Corp.*, 701 F.2d

397 (5th Cir. 1983), which noted that the joint employer doctrine under Title VII is
built upon "theories and rules developed in the related area of labor relations in
determining when separate business entities are sufficiently interrelated for an
employee whose Title VII rights have been violated to file a charge against both
entities." *Id.* at 403.  Even if this doctrine applies in the context of Texas insurance
law, Acceptance Indemnity is not entitled to summary judgment on the present record.
The joint employer determination  depends on a detailed factual analysis of several
factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3)
common management, and (4) common ownership or financial control."  *Id.* at 404.
Control over the employee's work is the most significant factor.  *Id.*[33]

Trevino's focus on control, notably, is analogous to the Texas courts' approach
to the joint-employer question in the context of workers' compensation insurance.
Texas courts apply the "common law 'right of control' test"  to determine whether two
nominally distinct entities are joint employers.  *United States Fire Ins. Co. v. Alsup*,
118 S.W.3d 851, 854 (Tex. App.—Ft. Worth 2003, no pet.) (citing *Garza v. Excel
Logistics, Inc.*, 100 S.W.3d 280, 283-84 (Tex. App.—Houston [1st Dist.] 2002, no
pet.)); *Bliss v. NRG Industries*, 162 S.W.3d 434, 435-36 (Tex.  App.—Dallas 2006,
pet. denied).  If the joint employer test applies to the insurance circumstances presented

[33]    The parties will need to brief for the purposes of trial the applicability of this doctrine to the
insurance context.

here, application of the test requires resolution of factual issues regarding the facts and circumstances of Maltez's employment during the three months that Salvage existed.

The Court declines to give advisory opinions on the legal issues of whether the joint employer doctrine, or for that matter, the single enterprise theory, applies to the case at bar until at a minimum there is a determination of the central factual disputes of who controlled Maltez's work, as well as other pertinent facts and circumstances noted above concerning the relationship between Salvage and Associated. The present record is insufficient. While Salvage and Automotive at the time of Maltez's accident may have maintained separate names and engaged different businesses at least to some degree, the two businesses shared a single location and, apparently, a common accounting system. The extent to which they relied on work by shared employees is disputed. The financial arrangements between these Defendants also is unclear. There is scant evidence about who gave Maltez work assignments and the nature of those assignments. These issues may turn in part on credibility assessments that must be left to the trier of fact. The evidence presented does not establish as a matter of law that Salvage and Automotive were joint employers under Texas law, even if that doctrine, or the single business enterprise doctrine, applies.[34]

---

[34]    Plaintiff also suggests briefly that Automotive and Salvage were joint employers of Maltez because the businesses were a joint venture. This argument fails to warrant summary judgment for the same reason as the single business enterprise theory, a lack of evidence. Establishing that two entities are in fact a joint venture under Texas law also requires a factual

IV.  **CONCLUSION**

Acceptance Indemnity has failed to show the absence of a genuine issue of material fact as to whether Maltez was an employee of Automotive, either solely or jointly with Salvage.  Summary judgment is therefore not warranted.  It is accordingly

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 41] is **DENIED**.

SIGNED at Houston, Texas, this **28**th day of **August, 2007.**

Nancy F. Atlas
United States District Judge

---

showing.  *See North Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 120 (Tex. App.—Beaumont 2001, pet. denied).  Similarly, federal courts require factual showings that are not present on this record in order to find that two entities formed a joint venture.  *See Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616-17 (5th Cir. 1999) (citing *Radio Union v. Broadcast Service*, 380 U.S. 255, 257 (1965); *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)).