# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ACCEPTANCE INDEMNITY INSURANCE COMPANY,<br>    Plaintiff, | §<br>§<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. H-04-2222 |
| MELVIN ALFREDO MALTEZ *et al.*,<br>    Defendants. | §<br>§<br>§<br>§ | |

## MEMORANDUM AND ORDER

This is a declaratory judgment action brought by Plaintiff Acceptance Indemnity Insurance Company ("Indemnity") seeking resolution of a dispute over the scope of insurance coverage provided by Indemnity through an insurance policy listing Defendant Associated Automotive, Inc. ("AAI") as the named insured. Indemnity has filed a Second Motion for Summary Judgment ("Motion") [Doc. # 54]. Defendants AAI, Cal Enderli, Shirley Enderli, Cal Enderli, Jr., and Melvin Maltez collectively have responded [Doc. # 58], and Indemnity has replied [Doc. # 59]. The Court has considered these documents, all pertinent matters of record, and applicable legal authorities, and concludes that Indemnity's Second Motion for Summary Judgment should be **denied**.

I.       **FACTUAL BACKGROUND**

The factual record is set out in more detail in the Court's Memorandum and Order of August 28, 2007 [Doc. # 57]. Briefly, AAI, the named insured in this case, operates as an automotive repair business owned by Defendants Cal and Shirley Enderli. In May 2003, the Enderlis' son, Cal Enderli, Jr., purchased AAI's salvage operations and began operating as Associated Automotive Salvage ("Salvage"), renting a portion of the AAI premises and sharing various administrative operations – including payroll services – with AAI.

Although the exact employment relationship between Defendant Maltez and the two businesses remains unresolved, it is agreed that Maltez was working on the AAI/Salvage premises in August 2003 when he was injured while operating a torch. Maltez subsequently sought recovery for his injuries in state court and was awarded $150,000 plus interest and costs after the state court jury found that Salvage was negligent.[1] The defendants seek indemnification from Indemnity, which had previously issued to AAI a "Commercial Auto Coverage Part-Garage Policy" ("Policy") that was in effect at the time of Maltez's injury. Throughout this litigation, Indemnity has offered a variety of arguments as to why it is not obligated to indemnify AAI under the terms of the Policy and now moves for summary judgment,

---

[1]      The state court lawsuit is *Maltez v. Associated Automotive, Inc., et al.*, No. 2004-01878, in the 80th Judicial District for Harris County, Texas.

asserting that Maltez did not suffer an "accident," as the term is used under the Policy and, alternatively, that Salvage and/or the "single business enterprise" ("SBE") allegedly comprised of AAI and Salvage was not a named insured under the Policy.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp.*, 477 U.S. at 322–23; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003).

For summary judgment, the initial burden falls on the movant to identify areas

essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the non-moving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). However, if the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most

favorable to the non-moving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the non-moving party must present specific facts which show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Finally, "[w]hen evidence exists in the summary judgment record but the non-movant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to

sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted); *see also De la O v. Hous. Auth. of El Paso*, 417 F.3d 495, 501 (5th Cir. 2005).

### B. Interpretation of Insurance Policies

Interpretation of an insurance policy is a question of law. *Data Specialties, Inc. v. Transcontinental Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997); *Guaranty Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 135 (5th Cir. 1990). In a diversity case such as this, the Court applies Texas law to construe the policy. *See American States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1998). "Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts in general." *Id*. "The terms used in an insurance policy are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense." *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). Hence, where a clause is unambiguous, "a court cannot resort to the various rules of construction" to interpret its meaning. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex. 1987). However, where there is ambiguity, the policy "must be strictly construed in favor of the insured to avoid . . . exclusion." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*, 468 F.3d 857, 859 (5th Cir. 2006).

"The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies." *United Nat. Ins. Co. v. Hydro Tank, Inc.*, — F.3d —, 2007 WL 2319109 (5th Cir. Aug. 15, 2007) (citing *Lincoln Gen'l Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005)). Similarly, the insurer bears the burden of showing that a policy limitation or exclusion constitutes an affirmative defense to or avoidance of coverage. *See* TEX. INS. CODE ANN. art. 554.002; *Lincoln Gen. Ins. Co.*, 468 F.3d at 859; *Crocker v. Am. Nat'l Gen. Ins. Co.*, 211 S.W.3d 928, 931 (Tex. App.–Dallas 2007, no pet.).[2] However, the Court strictly construes exceptions and limitations in an insurance policy against the insurer. *Canutillo Indep. Sch. Dist.*, 99 F.3d at 701 (5th Cir. 1996).

### III. ANALYSIS

#### A. Whether Maltez Suffered an "Accident" under the Policy

Defendants AAI, the Enderlis, and Maltez have the burden to prove coverage exists under the Policy. In the pending Motion, Indemnity argues that for the

---

[2] During the pendency of Maltez's suit in state court, Texas recodified its insurance law. TEX. INS. CODE ANN. art. 21.58 (2004), which was in force at the time of the Court's last substantive ruling in this case, was repealed by Acts 2003, 78th Leg., ch. 1274, § 26(a) (effective Apr. 1, 2005). The new statutory language, codified at TEX. INS. CODE ANN. art. 554.002, is not substantively different. *See Yorkshire Ins. Co., Ltd. v. Seger*, — S.W.3d —, 2007 WL 1771614 (Tex. App.–Amarillo 2007) ("The Legislature expressly indicated that no substantive change in the law was intended").

purposes of indemnity under the Policy written for AAI, there was no "accident." Specifically, Indemnity asserts that because the only finding made by the state court jury with regard to AAI was that it formed an SBE with Salvage, it is that act which represents the "accident" for which Defendants are seeking coverage under the Policy. According to Indemnity, by looking to the "elements submitted to the jury on the formation of the 'single business enterprise,'" it is clear that "such a formation did not come about because of an 'accident.'"[3]  Thus, Indemnity argues, the insurance company is not obligated to indemnify AAI in this case.[4]

The Court is not persuaded by Indemnity's position. Putting aside the uncertainty under Texas law of application of the SBE doctrine in this context, the issue is whether an event falls within the terms of the Policy. The Policy provides that Indemnity "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies caused by an 'accident' and resulting from 'garage operations,'"[5] excluding from such coverage injuries sustained

---

[3]   Motion [Doc. # 54], at 11.

[4]   Conspicuously absent from Plaintiff Indemnity's filings is a request that this Court apply the doctrine of collateral estoppel. As noted in the August 28, 2007 Memorandum and Order [Doc. # 57] (the "August Memorandum") denying Plaintiff's (First) Motion for Summary Judgment [Doc. # 41], Indemnity waived this defense. As a result, the state court findings are not deemed conclusive in this case on the relationship between AAI and Salvage. *See* August Memorandum, at 12–13.

[5]   Policy, Exhibit A to Plaintiff's Second Motion for Summary Judgment [Doc. # 54], at 64.
(continued...)

by an "employee."[6]

Although "accident" is not defined in detail in the Policy, the word is to be given its common meaning. *See, e.g.*, *Sport Supply Group, Inc. v. Columbia Gas Co.*, 335 F.3d 453, 462 n.8 (quoting *Sec. Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703, 704 (Tex. 1979)) ("[T]he requirement under Texas law [is] that terms in an insurance policy 'are to be given their ordinary and generally accepted meaning, unless the policy shows that the words were meant in a technical or different sense.'"); *see also Canutillo Indep. Sch. Dist.*, 99 F.3d at 700. The dictionary definition of "accident" is "an unintentional and unfortunate happening," or "something that happens unexpectedly."[7] The Policy provides: An "'[a]ccident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'"[8] In addition, the Policy states that "[a]ll 'bodily injury' . . . resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one 'accident.'"[9] The Policy evinces no intention to

---

[5]   (...continued)
Because the insurance policy is not separately paginated, the Court will cite to the pagination of the Policy as designated by the heading added by the Court's electronic filing system.

[6]   *Id.* at 66.

[7]   RANDOM HOUSE WEBSTER'S DICTIONARY 5 (1993).

[8]   Policy, at 74.

[9]   *Id.* at 68.

assign "accident" anything other than its common meaning. Thus, an injury resulting from misuse of, or a defect in, a torch, would constitute an "accident" potentially subject to coverage under the Policy. *See, e.g., Transit Mix Concrete & Materials Co. v. Johnson*, 205 S.W.3d 92, 94 (Tex. App.–Eastland 2006, pet. filed) (describing as an "accident" injuries suffered by the appellee employee while operating an acetylene torch); *Crown Plumbing, Inc. v. Petrozak*, 751 S.W.2d 936, 937 (Tex. App.–Houston [14th Dist.] 1988, no pet.) (describing an "on-the-job accident" involving a sweating torch).

Using these definitions, if Maltez was injured while engaged in "garage operations"[10] for a named insured, then he suffered an "accident" potentially subject to coverage under the Policy. Indemnity's novel interpretation of the state court jury's SBE finding is unpersuasive and unsupported by any authority.

Indemnity alternatively contends that, absent a finding of negligence on the part of AAI, there can be no assessment of liability against AAI and accordingly, no coverage under the Policy. Indemnity has pointed out that in his state suit, Maltez only sought a negligence finding against Salvage, not AAI. Thus, Indemnity argues, there is no causal connection between the insured—AAI—and the injury suffered by

---

[10] According to the Policy, "'[g]arage operations' includes the ownership, maintenance or use of the 'autos' indicated [elsewhere in the Policy documents]" and also "all operations necessary or incidental to a garage business." Policy, at 75. There is a fact issue, at a minimum, as to what constitutes "garage operations" under the Policy.

Maltez. In response, Defendants argue that coverage under the Policy does not require a finding of causality or fault, citing the liability coverage language from the Policy: "We [Indemnity] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' . . . to which this insurance applies caused by an 'accident' and resulting from 'garage operations' . . . ."[11] Although Defendants correctly cite the language of the Policy, their argument fails to recognize that the Policy provides indemnity for only those sums that an "'insured' *legally* must pay as damages."[12] Thus, "the duty to indemnify is generally not ascertainable until after the insured has been held liable." *Lincoln Gen. Ins. Co.*, 468 F.3d at 858.

To date, AAI has not been found liable for the injury to Maltez and Indemnity's duty to indemnify has not been established. Because there remain factual and legal issues concerning Maltez's relationship to AAI and the relationship between AAI and Salvage, the burden remains on Defendants to demonstrate that Maltez suffered an "accident" covered by AAI's Policy. If they are successful, then Indemnity bears the burden to show that Maltez was an employee of an entity insured by the Policy, or that some other exclusion applies.

### B. Application of the Single Business Enterprise Doctrine to Insurance Contracts

---

[11]   Policy, at 64.

[12]   *Id.* (emphasis added).

Indemnity next focuses on the implications of the state court finding that AAI and Salvage formed an SBE.[13] Indemnity contends that this "enterprise" is a wholly new legal entity, and as such, it is not an "insured" under the Policy. Defendants offer little in response, but do suggest that a finding in this Court that Salvage and AAI were an SBE[14] renders AAI "legally [liable] for damages due to bodily injury that resulted from an accident that arose out of garage operations."[15] Although Defendants' position assumes resolution in their favor of several open questions, the Court nonetheless rejects Plaintiff's argument.

As a federal court sitting in diversity, the Court must make an "*Erie* guess"[16] about how the Texas Supreme Court would apply the SBE doctrine in the circumstances presented here. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 478 (5th Cir. 2000); *United States v. Johnson*, 160 F.3d 1061, 1063 (5th Cir. 1998). "In the absence of Texas Supreme Court pronouncements, we generally defer to the holdings of lesser state courts unless we are convinced by other evidence that the state law is otherwise." *Hamilton*, 232 F.3d at 479 (citing *Johnson*, 160 F.3d at

---

[13]  *See* Judgment, Appendix C to Plaintiff's Second Motion for Summary Judgment [Doc. # 54].

[14]  Again, reliance on the doctrine of collateral estoppel has been avoided.

[15]  Defendants' Joint Response to Plaintiff's Second Motion for Summary Judgment [Doc. # 58], at 6.

[16]  *See Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938).

1063).

The SBE doctrine itself has not been endorsed by the Texas Supreme Court, and its vitality remains somewhat uncertain. *See So. Union Co. v. City of Edinburg*, 129 S.W.3d 74, 87 (Tex. 2003); *see also Carlson Mfg., Inc. v. Smith*, 179 S.W.3d 688, 694 (Tex. App.–Beaumont 2003, no pet.) (Although "several intermediate [Texas] courts . . . have recognized a concept of 'single business enterprise' in one context or another . . . the [Texas] Supreme Court has thus far reserved ruling on the issue."). Because the doctrine has been recognized by the intermediate state courts, however, this Court deems the doctrine generally valid under Texas law.[17]

Texas courts give no indication that an SBE is intended to be viewed as a separate legal entity. Rather, the SBE doctrine exists as an "equitable veil-piercing theory" by which "'each constituent corporation [may be held] liable for the debts and liabilities incurred in the common enterprise.'" *De La Hoya v. Coldwell Banker Mex., Inc.*, 125 Fed. Appx. 533, 536–37 (5th Cir. 2005) (quoting *N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 120 (Tex. App.–Beaumont 2001, pet. denied)). Its purpose, "like the alter ego theory and other doctrines designed to pierce the corporate veil, is to prevent an inequitable result." *Carlson Mfg. v. Smith*, 179 S.W.3d 688, 694 (Tex. App.–Beaumont 2005, no pet.). Thus, Texas courts have

---

[17] *See id.* at 14–15.

permitted collection of a debt from a member of an SBE upon a finding that the constituents "integrate[d] their resources to achieve a common business purpose," and incurred debt in pursuit of that purpose. *Old Republic Ins. Co. v. EX-IM Servs. Corp.*, 920 S.W.2d 393, 396 (Tex. App.–Houston [1st Dist.] 1996, no writ.); *see also Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718 (Tex. App.–Austin 2004, pet. granted). A finding that two or more entities operated as an SBE permits recovery against one entity for the debts and liabilities of another. *See Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536 (Tex. App.–Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also Hall v. Timmons*, 987 S.W.2d 948 (Tex. App.–Beaumont 1999, pet. denied); *Superior Derrick Servs., Inc. v. Anderson*, 831 S.W.2d 868 (Tex. App.–Houston [14th Dist.] 1992, writ denied ); *Hideca Petroleum Corp. v. Tampimex Oil Int'l, Ltd.*, 740 S.W.2d 838 (Tex. App.–Houston [1st Dist.] 1987, no writ). Should it be found that AAI and Salvage operated as an SBE, any debts and liabilities of one of these two entities, incurred in pursuit of the SBE's common business purpose, would have to be deemed debts and liabilities of the other, and not of some hypothetical "new" entity.[18] *See, e.g.*, *N. Am. Van Lines, Inc.*, 50 S.W.3d at 113 (holding that two entities were an SBE at least "with respect to their

---

[18]   As a policy and theoretical matter, there seems to be little point to creation of a new entity from the merged constituents, as Indemnity suggests. Presumably, the new entity would have no assets apart from the assets of its constituents.

Texas operations" and were therefore "liable for each other's negligence" with respect to an accident related to those operations).

However, implicit in Defendants' position is the untested theory that a finding in this Court that two separate businesses (AAI and Salvage) formed an SBE would resolve the dispositive issue in this case, namely, whether Defendants may obtain indemnification for damages occasioned by only one member of the enterprise – Salvage – via the other member's – AAI's – insurance policy.[19] Resolution of this issue is premature because there remain material fact issues. But the outcome is informed by the following observations and legal principles.

The application of the SBE doctrine in the context of insurance coverage has not been explored by Texas courts.[20] The SBE theory is one of several theories used

---

[19] Inconsistently, Defendants also suggest that a finding in this Court that AAI and Salvage were an SBE does *not* require the legal conclusion that an employee of one entity is also an employee of the other. The Court is skeptical of this proposition. A finding that multiple business entities operated as an SBE is based on the determination that those entities "integrate[d] their resources to achieve a common business purpose." *Formosa Plastics Corp. v. Kajima Int'l, Inc.*, 216 S.W.3d 436, 460 (Tex. App.–Corpus Christi 2006, pet. filed) (citing *Old Republic Ins. Co. v. EX-IM Servs. Corp.*, 920 S.W.2d 393, 396 (Tex. App.–Houston [1st Dist.] 1996, no writ.). The finding Defendants seek would seem to require, at a minimum, a showing that the employee in question was *not* operating in furtherance of the SBE's "common business purpose." Because this inquiry raises material fact issues, the Court does not reach the ultimate legal question whether an employee of one constituent of an SBE is necessarily an employee of all others. *Cf. N. Am. Van Lines, Inc.*, 50 S.W.3d at 121 (analyzing, in light of federal law concerning the liability of interstate motor carriers, how a finding that two entities were an SBE defined the employment relationship between an employee of one entity and the SBE).

[20] *See* August Memorandum, at 14–16.

to pierce the corporate veil in order to assign liability where it otherwise would not exist. *See Carlson Mfg.*, 179 S.W.3d at 694. Unlike other veil-piercing theories, the SBE doctrine does not require a finding of actual fraud in order to expand liability. *See, e.g.*, *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 150 S.W.3d 718, 744–47 (Tex. App.–Austin 2004, no pet.); *N. Am. Van Lines,* 50 S.W.3d at 120–21; *Paramount Petroleum Corp.*, 712 S.W.2d at 536. Instead, the doctrine requires only that a fact-finder consider a variety of factors to conclude that certain entities did not operate separately, but instead integrated their resources to achieve a common business purpose. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 348 (Tex. App.–Dallas 2005, no pet. h.). While the precise limits of the doctrine differ from other veil-piercing theories, such as "alter ego," the SBE doctrine is conceptually similar. *See Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986). Policies and patterns of Texas courts in the veil-piercing context are therefore relevant to assessment of the reach of the SBE doctrine.

Texas courts are reluctant to pierce the corporate veil and expand liability except in "compelling circumstances." *Robbins v. Robbins*, 727 S.W.2d 743, 746 (Tex. App.–Eastland 1987, ref. n.r.e.). Moreover, Texas law expresses more reluctance to apply veil-piercing theories in contract cases, as compared to tort cases, the notion being that one who is tortously injured does not choose his tortfeasor,

while contracting parties enjoy "the element of choice inherent in a contractual relationship." *Miles v. Am. Tel. & Tel. Co.*, 703 F.2d 193, 195 (5th Cir. 1983). Indeed, after the *Castleberry* opinion appeared to discard the traditional distinction between tort and contract in the context of corporate veil-piercing, the Texas legislature responded, and now requires a showing of actual fraud in order to pierce the corporate veil in a breach of contract case. TEX. BUS. ORGS. CODE § 21.233 (Vernon Supp. 2006)[21]; *see* TEX. BUS. CORP. ACT art. 2.21–repealed eff. Jan. 1, 2010; *see also So. Union Co.*, 129 S.W.3d at 86–87 (reserving judgment on whether the SBE doctrine "is a necessary addition to Texas law regarding the theory of alter ego for disregarding corporate structure and the theories of joint venture, joint enterprise, or partnership for imposing joint and several liability," but stressing that the court "said nothing [in earlier cases] to indicate that a 'single business enterprise' theory could be used to view the contracts of distinct corporations as the contracts of a single, amalgamated entity"); *De la Hoya*, 125 Fed. App'x. at 538–41.

It is a serious and questionable step to hold a party to any contract, let alone a contract in the complex arena of insurance, liable for debts of another party with

---

[21] This provision insulates corporate shareholders from "liability to the corporation or its obligees with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from a contractual obligation . . . unless the obligee demonstrates that the [shareholder] caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder . . . ." TEX. BUS. ORGS. CODE § 21.233(a)(2), (b).

whom the original party had no contractual or tort relationship, the circumstance here.[22]  Nevertheless, the Court does not yet determine the applicability of the SBE doctrine to the scope of AAI's insurance policy to cover Salvage's wrong, because this legal question turns on fact issues that remain to be decided.

### IV.  CONCLUSION AND ORDER

For the reasons set forth above, the Court concludes that Indemnity has failed to demonstrate that it is entitled to summary judgment as a matter of law.  It is accordingly

**ORDERED** that Plaintiff's Second Motion for Summary Judgment [Doc. # 54] is **DENIED**.

SIGNED at Houston, Texas this **3rd** day of **October, 2007**.

*[signature]*
Nancy F. Atlas
United States District Judge

---

[22]  The uncertainty of application of the SBE doctrine in this context is highlighted by the fact that the doctrine is designed to prevent "inequitable results." *See Old Republic Ins. Co.*, 920 S.W.2d at 395 (citing *Castleberry*, 721 S.W.2d at 271–72) ("Texas courts have disregarded the corporate form when it is used as part of an unfair device to achieve an inequitable result, such as when a corporation is organized and operated as a mere tool or business conduit of another corporation, or when the corporate fiction is resorted to as a means of evading an existing legal obligation.").  The doctrine would appear to achieve its goal if liability is assigned to constituent members of an SBE, allowing an injured plaintiff to seek recovery from the enterprise as a whole.  It is not clear how requiring a non-SBE entity, such as an insurance company, to indemnify an SBE constituent, that was not a named insured under the insurance contract, and whose risks may not have been considered during the underwriting process, furthers the goal of a narrow doctrine that is intended primarily to permit recovery from a wrongdoer.  *See, e.g., Carlson Mfg.*, 179 S.W.3d at 693–94 (listing situations in which Texas courts have recognized the SBE doctrine).